# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **TEAIRRA BRAXTON**, <br><br> Plaintiff, <br><br> v. <br> **FIRST TRANSIT**, <br><br> Defendant. |

Case No. 1:17-cv-02622 (TNM)

## MEMORANDUM OPINION

Teairra Braxton alleges that First Transit, Inc. fired her for complaining about a supervisor's sexual harassment, failed to provide her proper union representation, and defamed her. First Transit seeks dismissal of her claims or, alternatively, an order directing Ms. Braxton to provide a more definite statement of her claims. Because Ms. Braxton has not adequately pled her improper representation and defamation claims and because all of her claims are untimely, the Court will grant First Transit's motion to dismiss and will dismiss as moot First Transit's alternative motion for a more definite statement.

**I.**

First Transit operates the D.C. Circulator bus system. Compl. Ex. 301 at 3 (ALJ Order dated April 18, 2016). Ms. Braxton began working as a bus operator for First Transit on August 26, 2014. Compl. 2. First Transit terminated her on January 28, 2016, six days after an incident between Ms. Braxton and a disruptive passenger on her bus.[1] *See* Compl. 2; *id.* Ex. 102 (Operator's Accident/Incident Report dated January 22, 2016). According to Ms. Braxton's

---

[1] Between hiring Ms. Braxton in 2014 and terminating her in 2016, First Transit also terminated Ms. Braxton in April 2015, reinstated her in September 2015, and suspended her in October or November 2015. *See* Pl.'s Opp. to Def.'s Mot. Dismiss 9, 14-15.

incident report, the disruptive passenger told her and the other passengers that bus rides should be free to African-Americans because of slavery and racial inequality. *Id*. at 1-2.[2] When the passenger asked Ms. Braxton if she agreed and confronted her about working for white people as an African-American, Ms. Braxton said that she was happy with her job. *Id.* at 2. The passenger then chastised her in vulgar terms and told her that she would never accomplish anything or get anywhere by working for "the white man." *Id.* She told him that he could not tell her that, adding that she did not care who she worked for and was happy with her life. *Id.*

After another passenger posted a recording of the incident on Twitter, First Transit placed Ms. Braxton on unpaid administrative leave pending an investigation into what it described as "an aggressive verbal confrontation with [a] passenger while operating the vehicle." *Id*. Ex. 101 (Notice of Personnel Action dated January 22, 2016). Six days later, First Transit terminated Ms. Braxton for "inappropriate behavior towards a passenger, in addition to [a] safety violation which is against First Transit policy." *Id*. Ex. 200 (Letter to Ms. Braxton from First Transit dated January 28, 2016). First Transit's termination letter cited four alleged violations of company policy:

- 11.01 (Disloyalty) - Conducting oneself in such a manner that the conduct would be detrimental to the interest or reputation of the Company.
- 11.01 (Safety) Violation of any safety rule or practice, or violation of operating rule or procedures that could put an employee or others in imminent danger or could result in bodily injury or damage to Company property. (State and federal regulations prohibit the operation of transit buses when passengers are forward of the white or yellow line).[3]

---

[2] This was after the passenger tried to pay for his ride with a public transit card that did not work, and after Ms. Braxton said she would cover his fare since it was cold outside. *Id.* at 1.

[3] An Administrative Law Judge who determined Ms. Braxton's eligibility for unemployment benefits after her termination noted that the passenger stood in front of the white safety line for about 30 seconds and that Ms. Braxton did not stop the bus during that time. *Id.* Ex. 301 at 7 (ALJ Order dated April 18, 2016).

- 11.02 (Personal Conduct) - Discourteous or inappropriate attitude or behavior to passengers, other employees, or members of the public. Disorderly conduct during working hours.
- 10.03 (Vehicle Operation) - Driving the bus with only one hand on the wheel while engaging in a heated verbal debate with a passenger while other passengers were on the [vehicle] is considered "reckless operation[.]"

*Id*.

Ms. Braxton alleges that this explanation of her firing hides First Transit's real motive to retaliate against her for two complaints that she made against a former supervisor who allegedly asked her to sleep with him many times and promised to look out for her if she did. Compl. at 2; *id*., Exs. 203-204 (Operator's Accident/Incident Reports dated October 27, 2015 and October 30, 2015, respectively).[4] She tried to get help from the Equal Employment Opportunity Commission, but the Commission sent her a letter explaining that it was closing her case because her charge "was not timely filed with EEOC" and because she "waited too long after the date(s) of the alleged discrimination to file [her] charge." *Id*. Ex. (Dismissal and Notice of Rights, EEOC Charge No. 570-2017-01910, dated September 6, 2017).

Ms. Braxton also went before an Administrative Law Judge who reviewed First Transit's termination decision to determine Ms. Braxton's eligibility for unemployment benefits. *Id.* Ex. 301 at 2 (ALJ Order dated April 18, 2016). He noted that "[t]he fact that an employee's discharge appears reasonable from the employer's perspective does not necessarily mean that the employee engaged in misconduct" and decided that First Transit had not proven any misconduct by Ms. Braxton that would disqualify her from receiving unemployment benefits. *Id.* at 7.

---

[4] Another filing by Ms. Braxton suggests the possibility that First Transit terminated her because she refused to pursue her complaint at a time when the company was seeking grounds to fire the supervisor in question. Pl.'s Opp. to Def.'s Mot. Dismiss 2, 15-20.

Ms. Braxton filed a Complaint against First Transit in this Court on December 4, 2017. Although the Complaint is sparse, the Court liberally construes it as a claim of race discrimination, sexual harassment, and retaliation under Title VII of the Civil Rights Act, improper representation by a union representative under Section 301 of the Labor Management Relations Act, and defamation under District law. *See* Compl. at 1.[5] In evaluating these claims, the Court also considers the allegations in Ms. Braxton's Opposition to First Transit's Motion to Dismiss, including the section that she has entitled A More Definite Statement. *See* Pl.'s Opp. to Def.'s Mot. Dismiss 7; *see also Richardson v. United States*, 193 F.3d 545, 548 (D.C Cir. 1999) (holding that district court should read *pro se* plaintiff's filings together).

## II.

First Transit moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires that a complaint raise "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 545-46. Thus, a court evaluating a motion to dismiss for failure to state a claim does not accept the truth of legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

---

[5] This Court has jurisdiction over Ms. Braxton's Title VII and Section 301 claims because they arise under federal law. *See* 28 U.S.C. § 1331. It has supplemental jurisdiction over her defamation claim as it seems to be part of the same case and controversy. *See* 28 U.S.C. § 1367.

That said, the Court construes the Complaint in the light most favorable to the Plaintiff and accepts as true all reasonable inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). Consideration is limited to "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017). The Court construes *pro se* filings liberally, holding them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III.

### A.

Because Ms. Braxton alleges race discrimination, sexual harassment, or retaliation, the Court understands the Complaint as an invocation of Title VII. Before suing in federal court, a plaintiff must file a charge of discrimination with the Equal Employment Opportunity Commission, or EEOC. *See* 42 U.S.C. § 2000e-5(e), (f)(1). "In the District of Columbia, such an EEO charge must be filed within 300 days of the allegedly discriminatory/retaliatory act." *Duberry v. Inter-Con Sec. Sys.*, 898 F. Supp. 2d 294, 298 (D.D.C. 2012).

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). But equitable tolling is warranted only if a plaintiff "shows (1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010); *cf. Smith-Haynie v. Dist. of Columbia*, 155 F.3d 575, 579-80 (D.C. Cir. 1998) ("The court's equitable power to toll

5

the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances."). This "weighty burden" rests on the Plaintiff even at the motion to dismiss stage. *See Dyson v. Dist. of Columbia*, 710 F.3d 415, 420-21 (D.C. Cir. 2013) (finding on appeal from grant of motion to dismiss that plaintiff had not discharged her burden).

First Transit moves to dismiss Ms. Braxton's Title VII claims with prejudice because she did not file a timely EEO charge. Def.'s Memo. ISO Mot. Dismiss at 6-9. The EEOC's letter supports this argument by documenting that Ms. Braxton waited too long to file her charge. Compl. Ex. (Dismissal and Notice of Rights, EEOC Charge No. 570-2017-01910, dated September 6, 2017).[6] And Ms. Braxton's Opposition appears to concede the untimeliness of her charge. Her Opposition references "my late filling [sic] of my complaint." *See* Pl.'s Opp. to Def.'s Mot. Dismiss 4. If this is a reference to her EEO charge, it expressly concedes the point. If it is not, then Ms. Braxton's Opposition concedes untimeliness by offering no response to First Transit's claim that she filed her EEO charge out of time. *See Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

---

[6] Ms. Braxton's deadline to file an EEO charge related to her January 28, 2016 termination would have been November 23, 2016. *See Duberry*, 898 F. Supp. 2d at 298. Ms. Braxton has not stated and the record does not make clear exactly when she filed EEO charges. But the second and third pages of her Complaint appear to be a copy of her EEO charge: Although she filed her Complaint on December 4, 2017, she signed and dated these pages on July 31, 2017 and put a header at the top describing the document as a Charge Letter. *See* Compl. 2-3.

6

Ms. Braxton has offered two possible explanations for the untimeliness of her EEO charge.[7] First, Ms. Braxton's Complaint, which appears to be a copy of her EEO charge, states, "I'm just now bringing this matter to your attetion [sic] because of being improperly represented by my union rep used for the matter of my termination." Compl. 2. Second, her Opposition to First Transit's Motion to Dismiss states, "I have attached a copy for the court review a medical history I also submitted to first transit at time of employment for more of a factual factor of what lead to my late filling of my complaint against first transit [sic throughout]." Pl.'s Opp. to Def.'s Mot. Dismiss 4. Ms. Braxton apparently refers to an attachment to her Complaint marked as Exhibit 205. This document states that Ms. Braxton has Graves' disease, which "can cause palpitation, rapid heart beats, anxiety, dizziness, sweating, vision problems, irritiability [sic], aggitation [sic], mood instability, [and] fatigue." Compl. Ex. 205 at 1 (Form signed by health care provider, dated February 1, 2016). It notes that the condition sometimes caused Ms. Braxton to miss work, states that Ms. Braxton needed intermittent leave for medical appointments and for times that she felt sick, and suggests that she might need one or two weeks off if she had a surgical intervention. *Id.* at 1-2.

Neither of Ms. Braxton's explanations for the untimeliness of her EEO charge shows an extraordinary circumstance that would justify equitable tolling. First, Ms. Braxton's vague claim of improper union representation does not state what her union representative did or failed to do and does not explain how it delayed her EEO charge. *See* Compl. 2. Even if Ms. Braxton's representative acted negligently in a way that prevented timely filing of the charge, this would not be an extraordinary circumstance sufficient to toll Ms. Braxton's deadline. *See, e.g.*, *Irwin v.*

---

[7] Neither explanation clearly addresses the timing of her EEO charge, but the Court construes them as possible explanations for the untimeliness of the charge. *See Erickson*, 551 U.S. at 94 (requiring liberal construction of *pro se* pleadings).

*Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (holding that a lawyer's extended absence from his office when the EEOC delivered a notice constituted "a garden variety claim of excusable neglect" that did not justify tolling Title VII deadline for his client); *Tyler v. Henderson*, 2001 WL 194930 at *5 (D.D.C. 2001) (refusing to toll Title VII deadline because "the untimely district court filing resulted from nothing more than attorney neglect"). Second, Ms. Braxton has not shown that her medical condition prevented timely filing since the documentation she submitted only shows a need for intermittent breaks from work that would not have occupied the entire 300-day period in which she could have filed an EEO charge. *See* Compl. Ex. 205 at 1-2 (Form signed by health care provider, dated February 1, 2016).

Even if Ms. Braxton had identified extraordinary circumstances that prevented timely filing, tolling would only be appropriate if she also showed that she pursued her rights diligently. *See Holland*, 560 U.S. at 649. Ms. Braxton has alleged no facts about her efforts to pursue her rights during the 300 days that she had to exercise them. The facts that she has alleged certainly suggest that she was the victim, not the culprit, of the ugly January 2016 incident. Unfortunately, though, they do not show that she can obtain a legal remedy. Because Ms. Braxton did not file a timely EEO charge and has not shown grounds for equitable tolling, the Court will grant First Transit's motion to dismiss her Title VII claims of race discrimination, sexual harassment, and retaliation. *See Dyson*, 710 F.3d at 421-22.

**B.**

Ms. Braxton's Complaint asserts that her union improperly represented her. Compl. at 2. The Court construes this as a claim for breach of a collective bargaining agreement under Section 301 of the Labor Management Relations Act. *See* 29 U.S.C. § 185. A Section 301 claim technically involves two "inextricably interdependent" causes of action—one against the

employer for breach of the collective bargaining agreement and one against the union for breaching its duty of fair representation. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164 (1983). "[A] plaintiff must prevail upon [her] unfair representation claim before [she] may even litigate the merits of [her] § 301 claim against the employer." *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 67 (1981).

Ms. Braxton's conclusory allegation that her union represented her improperly fails to state an unfair representation claim against the union, which the Complaint does not even name as a defendant. *See Iqbal*, 556 U.S. at 678. The Complaint does not identify the union, describe the collective bargaining agreement at issue, or specify how the union breached any duty it owed Ms. Braxton. Because Ms. Braxton has not stated an unfair representation claim against the union, her Section 301 claim against First Transit cannot go forward. *See Mitchell*, 451 U.S. at 67.

Ms. Braxton's Section 301 claim also fails because it is untimely. A plaintiff must bring a Section 301 claim based on a union's unfair representation within six months. *DelCostello*, 462 U.S. at 172. The clock begins to run "from the later of (1) when the employee discovers, or in the reasonable exercise of diligence should have discovered, the acts constituting the alleged breach by the employer, or (2) when the employee knows or should have known of the last action taken by the union which constituted the alleged breach of its duty of fair representation." *Watkins v. Comm'cns Workers of Am., Local 2336*, 736 F. Supp. 1156, 1159 (D.D.C. 1990) (cleaned up). Ms. Braxton filed this lawsuit on December 4, 2017, roughly 22 months after her January 28, 2016 termination. Because she filed the lawsuit well after the six-month limit, her Section 301 claim fails.

9

## C.

Under District of Columbia law, the elements of a defamation claim are

(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001). "A statement is defamatory if it tends to injure the plaintiff in [her] trade, profession or community standing, or lower [her] in the estimation of the community." *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990).

Ms. Braxton uses the words "defamation of character" in her Complaint but alleges no facts to explain the basis for a defamation claim. Compl. at 2. The Complaint does not specify what false and defamatory statement First Transit made about Ms. Braxton, does not specify that First Transit published the statement to a third party without privilege, and does not address fault or harm. And Ms. Braxton took too long to file any claim based on defamation that led to her January 2016 termination. District law requires a plaintiff to bring her defamation claim within one year of discovering that a defamatory statement was published to her injury. D.C. Code § 12-301(4); *see also Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 882 (D.C. 1998). As noted above, Ms. Braxton sued roughly 22 months after her termination. Because she has not alleged that she discovered any defamation within a year of suing, the Court must also dismiss her defamation claim.

## IV.

Ms. Braxton alleges a disturbing saga of mistreatment at the hands of her employer, among others. Nonetheless, for the reasons stated above, the Court is required to grant First Transit's Motion to Dismiss and dismiss as moot First Transit's Motion for a More Definite Statement. A separate Order will issue.

Dated: August 20, 2018                     TREVOR N. MCFADDEN, U.S.D.J.